UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

GARY EDWARD WILLIAMSON,       )
                              )
        Plaintiff,            )
                              )        Civil Case No.
v.                            )        5:12-cv-334-JMH
                              )
UNITED STATES OF AMERICA,     )        **MEMORANDUM OPINION & ORDER**
                              )
        Defendant.            )
                              )

***

This matter is before the Court upon the United States' Motion to Dismiss or, in the alternative, Motion for Summary Judgment, on the grounds that this Court lacks jurisdiction over this Federal Tort Claims Act (FTCA) action. [D.E. 14]. Plaintiff has responded [D.E. 15], and the United States has filed a Reply [D.E. 18]. Thus, this matter is now ripe for review. For the reasons which follow, Defendant's motion will be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On October 26, 2009, while delivering mail for the United States Postal Service (USPS), Plaintiff stepped in a hole and twisted his ankle, fracturing the navicular bone in his right foot. [D.E. 1, ¶ 9]. Later that day, Plaintiff visited the emergency department at the Veterans Administration Medical Center (VAMC) in Lexington,

Kentucky, where he received an x-ray of his foot. [D.E. 1, ¶ 10]. Despite the fact that the navicular fracture was allegedly plainly visible on these initial x-ray films, it was not diagnosed. [D.E. 1, ¶ 10-12]. Plaintiff went back to the VAMC for several follow up visits, including on November 27, 2009, and December 7, 2009. [D.E. 1, ¶ 12]. However, VAMC physicians did not diagnose Plaintiff's fracture until March 1, 2010. [D.E. 1, ¶ 11]. As a result of the delay in the diagnosis, Plaintiff's condition went untreated and worsened between October 26, 2009, and March 1, 2010. [D.E. 1, ¶ 10-12]. Ultimately, Plaintiff required three surgeries to correct the navicular fracture instead of one.

In April 2007, more than two years prior to Plaintiff's navicular fracture, Plaintiff presented to the VAMC reporting pain in his right foot. [D.E. 1-1 at 9]. The VAMC took x-ray films of Plaintiff's right foot during this 2007 visit that indicated degenerative spurring "at the anterior margin of the tibiotalar joint and along the dorsal aspect of the midfoot . . .." [D.E. 1-1 at 9]. X-ray films taken in November 2009, one month after Plaintiff's navicular fracture, showed the spurring at the tibiotalar joint had "progressed from the 2007 study," with "more prominent spurring along the dorsal aspect of the

talonavicular and navicular tarsal joints . . ..” [D.E. 1-1 at 10]. In December 2009, Plaintiff received an MRI at the VAMC, and a radiologist compared the MRI with the November 2009 x-ray. [D.E. 1-1 at 12]. The radiologist noted further changes in Plaintiff's condition, including “[i]nflammatory change of the talar navicular articulation with some sclerotic change of the navicular bone noted” and “some degenerative arthritic change . . ..” [D.E. 1-1 at 12].

Plaintiff filed for compensation under the Federal Employee's Compensation Act (“FECA”) as a result of injuring his foot and ankle in the performance of his duty as a USPS employee in March 2010, and received $73,379.66 in temporary total disability net compensation and $27,801.27 for medical benefits. [D.E. 14-2 at 2]. Additionally, Plaintiff filed a tort claim with the Department of Veterans Affairs in November 2011, seeking damages for the VAMC's failure to diagnose and properly treat his navicular fracture. [D.E. 1-1]. Plaintiff waited for a final disposition of the claim, but had not received one at the end of six months. [D.E. 1, ¶ 5]. Thus, Plaintiff exercised his right to treat the decision as a final denial of his claim under 28 U.S.C. § 2675(a), and timely filed his FTCA claim in this Court.

3

## II. STANDARD OF REVIEW

As an initial matter, Defendant's motion is styled as a Motion to Dismiss under Rule 12(b)(1), or, alternatively, a Motion for Summary Judgment. [D.E. 14]. Because this Court intends to rely on affidavits filed outside of the pleadings when resolving this matter, it will treat Defendant's motion as one for summary judgment. *Wysocki v. Int'l Business Machine Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010) ("The federal rules require that, if . . . 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.'" (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 203 (6th Cir. 1998))).

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).

4

## III.   DISCUSSION

The United States argues that Plaintiff should be foreclosed from relying on the preexisting condition as part of his claim because it was not clearly presented in the FTCA Complaint or the initial Complaint in this Court. While the FTCA Complaint and Complaint in the instant matter do not specifically mention the preexisting condition, the medical records submitted with the FTCA Complaint and the Complaint before this Court reference the preexisting condition in such a way as to give adequate notice.  The preexisting condition affected the same area of the body as the work-related injury, and it was the defendant's malpractice in the treatment of that injury, which allegedly contributed to the exacerbation of the prior condition.  Granted, the allegations in the FTCA Complaint, and certainly the Complaint herein, could be more clearly stated, however, the plaintiff is not prevented from making this argument at this stage of the proceedings.

Generally, if a federal employee sustains an injury "while in performance of his duty," compensation provided through FECA is his exclusive remedy against the United States.  5 U.S.C. § 8102(a); *Wright v. United States*, 717 F.2d 254, 256—57 (6th Cir. 1983).  Therefore, "[i]njuries

5

which are compensable under the FECA . . . cannot be compensated under other federal remedial statutes such as the Federal Tort Claims Act." *Wright*, 717 F.2d at 257 (citing *United States v. Demko*, 385 U.S. 149, 151 n.1 (1966)).  In fact, "district courts lack subject matter jurisdiction to consider an action where there is a substantial question of FECA coverage." *Id.* at 257 (citing *Joyce v. United States*, 474 F.2d 215, 219 (3d Cir. 1973)). "A substantial question of FECA coverage is generally present where the Secretary has undertaken an 'action' to award or deny FECA benefits." *Id.* (citing *Gill v. United States*, 641 F.2d 195 (5th Cir. 1981)).

The Sixth Circuit developed a narrow exception, coined as the "dual capacity doctrine," to FECA's exclusive regime in *Wright v. United States*, 717 F.2d 254 (6th Cir. 1983). Under the dual capacity doctrine, "[a]n employer may become a third person, vulnerable to tort suit by an employee, if-and only if-he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." *Wright*, 717 F.2d at 259 (quoting 2A LARSON, WORKMEN'S COMPENSATION LAW § 72.81 (1982)).

In this particular case, Plaintiff concedes that a substantial question of FECA coverage is present, since the

6

Secretary has already awarded FECA compensation.  [D.E. 15 at 6].   Defendant thus argues that this Court lacks jurisdiction over Plaintiff's case.   Contrarily, Plaintiff argues that the dual capacity doctrine applies, giving this Court jurisdiction over his FTCA claim.  [D.E. 15 at 6].  A resolution of this matter thus depends on whether the dual capacity doctrine is applicable to Plaintiff's case.

If a federal employee alleges an injury as a result of negligent treatment of a preexisting, non-work-related condition while a patient at a government operated hospital, the Sixth Circuit has applied the dual capacity doctrine to allow the person to maintain an FTCA action. *Wright*, 717 F.2d at 259—60.   In *Wright*, the plaintiff was employed as a secretary at a VA hospital when she began experiencing severe abdominal pain from a ruptured tubal pregnancy.  *Id.* at 255.   The plaintiff was admitted to the VA hospital's emergency department, and when complications arose during an exploratory laparotomy, was placed on a respirator.  *Id.*  Because the respirator was incorrectly applied and operated, the plaintiff had to undergo corrective surgery to her trachea.  *Id.* at 256.   The plaintiff subsequently brought an FTCA claim against the United States, arguing that the VA hospital breached its standard of care while treating her.  *Id.*

7

Although the plaintiff's injury technically occurred while she was working, and, thus, FECA would usually provide her with an exclusive remedy, the Sixth Circuit applied the dual capacity doctrine and allowed her to maintain her FTCA claim. *Id.* at 260. The court observed that although the plaintiff was initially an employee of the VA Hospital, the relationship changed "when the doors of the emergency room swung open" and she became a patient – thus placing her in a dual capacity relationship with the VA hospital. *Id.* Therefore, particularly since the plaintiff was under no obligation to seek treatment for her ailment at the VA hospital,[1] the Sixth Circuit held that the VA Hospital acted in a "second persona unrelated to [its] status as employer" when the plaintiff became a patient, and allowed her to maintain a FTCA suit against the United States. *Id.* at 259—60. In *Wright*, the plaintiff's FECA claim was not timely filed, and, thus, it could not be processed. *Wright*, 717 F.2d at 256. The Sixth Circuit noted, however, that "even if Wright's pregnancy had been compensable under the FECA, the present action would not be barred." *Id.* at 259.

---

[1] Indeed, the *Wright* plaintiff alleged that when she requested to transfer to another hospital, the VA hospital would not allow it. *Wright*, 717 F.2d at 255.

Contrarily, if a plaintiff-employee's initial injury is clearly suffered in the performance of his or her duties, and is thus "work-related," the Sixth Circuit has refused to apply the dual capacity doctrine to allow a plaintiff to maintain an FTCA claim. *McCall v. United States*, 901 F.2d 548, 551 (6th Cir. 1990). In *McCall*, the plaintiff, a federal civilian employee at Wright-Patterson Air Force Base, fractured her hip when she fell down a flight of stairs at work and was treated at the Base Medical Center. *Id.* at 549. The plaintiff subsequently applied for and received FECA benefits for her hip injury. *Id.* After termination of her FECA benefits, the plaintiff filed an FTCA claim against the United States, alleging that medical malpractice committed during her initial surgery and rehabilitation treatment forced her to undergo a second surgery, causing her pain, suffering, and permanent disability *Id.*

The Sixth Circuit refused to apply the dual capacity doctrine under these facts. The court distinguished the plaintiff's case from *Wright* by pointing out that, although both plaintiffs were injured at work, the injury in *Wright* (ruptured tubal pregnancy) was "not work-related," whereas the *McCall* plaintiff's initial injury (falling down the stairs at work) "was clearly suffered in the performance of

9

her duties." *McCall*, 901 F.2d at 551 (alterations omitted). Further, the court pointed out that the injury in *Wright* (damaged trachea due to improper use of a respirator) was "quite distinct from the (ruptured tubal pregnancy) that brought her to the hospital in the first place." *Id.* Contrarily, the court noted that the *McCall* plaintiff's alleged malpractice injury (malpractice in the initial surgery and rehabilitation treatment) "was closely related to the initial injury." *Id.* Finally, the court observed that the *Wright* plaintiff's injury was not covered by FECA, unlike the *McCall* plaintiff. *Id.*

The United States argues that *McCall*, rather than *Wright*, controls under the instant circumstances. However, because the Court agrees with Plaintiff that the facts of his case are more analogous to *Wright*, the dual capacity doctrine applies, and the Court will maintain jurisdiction over his FTCA claim.

First, like in *Wright*, the United States clearly acted under two separate personas: 1) as Plaintiff's employer at USPS; and 2) as Plaintiff's medical care provider at VAMC. Indeed, the separation between the United States' personas is even clearer in Plaintiff's case than it was in *Wright*, making application of the dual capacity doctrine seem even more appropriate. For example, unlike the *Wright*

10

plaintiff, Plaintiff did not work at the VAMC, which was separated in both time and proximity from USPS. Additionally, there was no evidence that USPS encouraged him to seek treatment at a government-operated hospital as part of his employment, whereas the VA hospital in *Wright* voluntarily undertook treatment and allegedly refused to let her transfer to another medical facility. *Wright*, 717 F.2d at 255. It is also worth noting that Plaintiff's status as a veteran, and not his status as a USPS employee, entitled him to medical care at the VAMC, further exemplifying the separation between his employment at USPS and his medical treatment at the VAMC. Overall, the relationship between the parties indicates that the United States assumed a "second persona," satisfying the initial test for application of the dual capacity doctrine articulated in *Wright*.

Second, although it is true that Plaintiff's navicular fracture occurred at work, Plaintiff has presented evidence that he suffered from a pre-existing condition in his ankle that first began in 2007. [D.E. 1-1 at 9—10].[2]

---

[2] Specifically, Plaintiff presents medical notes from 2009 that compare his 2009 x-ray with his 2007 x-ray, which support his theory that he had a pre-existing condition in his right foot which worsened after the VAMC failed to diagnose his navicular fracture in October and November 2009. [D.E. 1-1 at 9—10].

Accordingly, he contends that the alleged malpractice (the failure to diagnose and properly treat the navicular fracture) aggravated his pre-existing condition. Therefore, like in *Wright*, when the facts are viewed in the light most favorable to Plaintiff, there is some evidence that his original injury came from a pre-existing personal pathology that was not job-related. *Wright*, 717 F.2d at 256. There remain genuine issues of material fact surrounding the extent that the VAMC's medical malpractice exacerbated his initial condition, and the damages that he would be entitled to receive as a result of this exacerbation.

The Court also notes that the Plaintiff's facts do not accord with the second distinction articulated in *McCall*, in which the *McCall* court concluded that the facts before it differed from *Wright* because the "alleged malpractice injury" (malpractice in surgery and rehabilitative treatment) "was closely related to the initial injury." *McCall*, 901 F.2d at 551.; [D.E. 15 at 7—8]. The *Wright* plaintiff's malpractice injury (damaged trachea) was vastly different than her initial injury (ruptured tubal pregnancy). *Wright*, 717 F.2d at 255—56. However, the *Wright* Court did not consider this as part of its analysis to regarding the dual capacity doctrine, and this Court

12

does not find this consideration dispositive of this matter. On balance, this Court finds that Plaintiff's situation is far more similar to that of *Wright* than *McCall*.

The crux of the United States' motion relies on the proposition that *McCall* bars the assertion of an FTCA claim when there is a substantial question of FECA coverage. Indeed, the *McCall* court did point out that the plaintiff's situation in that case differed from *Wright* because the *McCall* plaintiff was covered under FECA. *McCall*, 901 F.2d at 551. However, this distinction articulated by the Sixth Circuit in *McCall* is in conflict with its previous opinion in *Wright*, which stated that, because of the dual capacity doctrine, "even if Wright's pregnancy had been compensable under the FECA, the present action would not be barred." *Wright*, 717 F.2d at 259. Further, the *McCall* court stated this distinction in what nearly appears to be an afterthought, without any supporting authority. *McCall*, 901 F.2d at 551. Therefore, given the factual similarities of this case to *Wright*, and given that the *Wright* court specifically stated that the plaintiff's FTCA action would not be barred even if she had been covered under FECA, this Court concludes that FECA coverage is not determinative to whether the dual capacity doctrine applies.

13

Notably, the Sixth Circuit is in the minority when it applies the dual capacity doctrine to FECA claims. Most courts have either rejected the doctrine or found it inapplicable. *See, e.g.*, *Gallo v. United States Dep't. of State Foreign Serv. Grievance Bd.*, 776 F. Supp. 1478, 1481 (D. Colo. 1991); *Soltysiak v. United States*, No. 90C6775, 1991 WL 55750, at *3 (N.D. Ill. Apr. 8, 1991); *Votteler v. United States*, 904 F.2d 128, 130—31 (2d Cir. 1990); *Vilanova v. United States*, 851 F.2d 1, 7 n.24 (1st Cir. 1988); *Schmid v. United States*, 826 F.2d 227, 229—30 (3d Cir. 1987). Further, at least one court has interpreted recent Sixth Circuit decisions as favoring a departure from *Wright*. *See Soltysiak*, 1991 WL 55750, at *2 (citing *McCall* as authority that the existence of FECA coverage precludes a separate tort action); *see also Elman v. United States* 173 F.3d 486, 490—91 (3d Cir. 1999) (suggesting "the Sixth Circuit may have become disenchanted with the dual capacity doctrine.").

Regardless of the Sixth Circuit's suggested disenchantment with the dual capacity doctrine, *Wright* and *McCall* remain standing as the controlling law on this Court, and the undersigned is bound to apply the rules of the cases until the Sixth Circuit states otherwise. Moreover, the Court acknowledges that, as applied in

14

*Wright*, the dual capacity doctrine is a tough standard to meet, and the "unique circumstances" in *Wright* provide a very narrow exception to the rule that FECA coverage is a government employee's exclusive remedy for work-related accidents. *Wright*, 717 F.2d at 260. However, when viewed in the light most favorably to Plaintiff, the facts of this case appear to meet this narrow exception. Defendant's motion must be denied.

**IV. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Defendant's Motion to Dismiss, or Alternatively, Motion for Summary Judgment [D.E. 14], shall be **DENIED.**

This the 5th day of September, 2013.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge